## McKINNON v. WESTERN DEVELOPMENT CO.

(Circuit Court of Appeals, Second Circuit. April 10, 1912.)

### No. 179.

1. TROVER AND CONVERSION (§ 23*)—ACTIONS—DEFENSES—RIGHT OF POSSESSION IN THIRD PERSON.

It is a complete defense to an action for conversion of property which came lawfully into defendant's possession that it was delivered to a third person, who was entitled to its possession.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 163–166; Dec. Dig. § 23.*]

2. TROVER AND CONVERSION (§ 23*)—ACTIONS—EVIDENCE.

Plaintiff sued for the conversion of collateral by a bank to which he alleged it had been delivered as security for a loan which the bank agreed to make, but later refused to make, and there was evidence tending to support such allegations. *Held*, that it was error to exclude evidence offered by defendant to show that the arrangement was made with one of the bank's officers, who agreed personally to advance the money to another bank to make the loan, and did so, and that the collateral was delivered to him.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 163–166; Dec. Dig. § 23.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by the Western Development Company against John W. McKinnon as agent. Judgment for plaintiff, and defendant brings error. Reversed.

Underwood, Van Vorst & Hoyt (Alton B. Parker and J. Markham Marshall, of counsel), for plaintiff in error.

Ferdinand E. M. Bullowa (Morgan J. O'Brien and Emilie M. Bullowa, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The plaintiff, as assignee of the firm of Otto Heinze & Co., brought this action of conversion against the defendant as agent of the shareholders of the National Bank of North America to wind up the affairs of the bank. The complaint alleged that the firm of Otto Heinze & Co. on or about October 14, 1907, entered into an agreement with the Bank of North America, whereby the bank agreed to loan them $126,000, and that they deposited with the bank certain securities as collateral; that the bank failed to make the loan or any part thereof and dishonored the firm's check therefor; that on or about October 19, 1910, the plaintiff demanded of the defendant the return of the collateral, but the defendant failed and refused to return the same, and converted the securities to the use of the bank and the shareholders thereof. The answer admitted that the defendant was agent of the shareholders of the bank, the demand and refusal to deliver the securities, and denied the other allegations of the complaint.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the trial Otto Heinze, a witness on behalf of the plaintiff, testified that on October 14, 1907, about noon, he applied to his brother, F. A. Heinze, president of the Mercantile National Bank, for a loan of from $400,000 to $500,000 from the bank to Otto Heinze & Co. which F. A. Heinze refused to make. After a subsequent interview on the afternoon of the same day, he and F. A. Heinze went together to the Bank of North America where F. A. Heinze had a conversation with Charles W. Morse, vice president of the bank; he, Otto Heinze, remaining outside the room. At the close of this interview Morse told him that the Bank of North America would make the loan; that Otto Heinze & Co. would get the money, $400,000 to $500,-000, at the Mercantile National Bank; and that the Bank of North America would advance $126,000 on the following day upon receiving the collateral in question, which $126,000 was to be paid to the Mercantile National Bank on account of the loan of $400,000 to $500,000. In pursuance of this arrangement, Otto Heinze & Co. the next day delivered by messenger their note for $126,000, together with the collateral in question, at the window of the loan clerk of the Bank of North America, and drew a check on the Bank of North America to the order of the Mercantile National Bank for $126,000, which check the Bank of North America dishonored.

F. A. Heinze, a witness for the defendant, testified that, when Otto Heinze applied to him a second time on the afternoon of October 14th for the loan, he said he would go and lay the matter before Morse, and see what he thought of it; that the Mercantile National Bank would not make the loan unless the Bank of North America or Morse individually would participate in it; that he went with his brother to the Bank of North America, which refused to make the loan, but that he arranged with Morse to do so individually.

Alfred H. Curtis, president of the Bank of North America, testified that, when the securities of Otto Heinze & Co. were handed him October 15th by the loan clerk, he refused to make the loan, and, F. A. Heinze being present, F. A. Heinze took them into Mr. Morse's room.

On the plaintiff's motion and over the defendant's exception, the court struck out this testimony of F. A. Heinze and Curtis on the ground that Otto Heinze was not present when the arrangement was made, and that there was no proof that the firm of Otto Heinze & Co. had any knowledge before they sent the collaterals to the Bank of North America that the loan was to be made by Morse individually. He also over the defendant's exception refused to permit the defendant to prove that Morse individually agreed to participate in the loan of $400,000 to $500,000 to be made by the Mercantile National Bank to the extent of one-half thereof, and that he undertook to send on the following day $126,000 to the Mercantile National Bank on account of his share and the balance of his share on the next following day; that he was to have the securities in question for his protection; that he did send October 15th, $126,000 to the Mercantile National Bank against the securities, and that the Bank of North America had nothing whatever to do with the loan. In this state of

the case, viz., the plaintiff having shown that the securities were delivered to the bank, that Otto Heinze & Co.'s check on the bank for $126,000 had been dishonored, and that the securities had not been returned on demand, the court directed a verdict in favor of the defendant.

[1] Undoubtedly the safest and perhaps the most natural course would have been for the bank to return the collaterals to the senders. Still, having come lawfully into its possession, it would be a complete defense to the Bank of North America against the charge of conversion to show that it delivered the securities in question to a person entitled to their possession. 38 Cyc. 2063; Schermerhorn v. Van Volkenburgh, 11 Johns. (N. Y.) 529; Rotan v. Fletcher, 15 Johns. (N. Y.) 207; Davis v. Hoppock, 6 Duer (N. Y.) 254; Schryer v. Fenton, 15 App. Div. 158, 44 N. Y. Supp. 203.

[2] The plaintiff would have no standing whatever to complain of such an act. If Morse individually, and not the Bank of North America, agreed to participate in the loan to be made at the Mercantile National Bank, and advanced $126,000 payable to the Mercantile National Bank with these securities as collateral, he was entitled to the possession of them. Therefore the defendant should have been allowed to show that the bank did not participate in the loan and never agreed to do so, and that Morse did participate in it. It was for the jury to say whether Otto Heinze & Co. knew that the purpose of F. A. Heinze's visit to Morse was to get the participation either of the Bank of North America or of Morse, and that without participation the Mercantile Bank would not make the loan. F. A. Heinze might well have been found to have represented Otto Heinze & Co. sufficiently in this negotiation to state which of these parties agreed to participate in the loan. The defendant should have been allowed to show the fact, even if Otto Heinze was not in the room when the agreement was made between F. A. Heinze and Morse and even if Otto Heinze & Co. did not know when it sent the collateral to the Bank of North America that Morse individually, and not the bank, was participating in the loan. There is nothing inconsistent with these views in Hanover National Bank v. Suddath, 215 U. S. 110, 30 Sup. Ct. 58, 54 L. Ed. 115. In that case a bank, instead of returning to its correspondent bank notes sent to it for discount which it refused to discount, claimed the right to keep them under a banker's agreement, giving it a general lien upon all securities deposited with it by the sender.

The judgment is reversed.